IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KOPPERS INC., <br><br> Plaintiff, <br><br> v. <br><br> R. MICHAEL JOHNSON, <br><br> Defendant. | Civil Action No. 1:20-cv-02339 <br><br> **COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiff Koppers Inc. ("Koppers"), by and through its undersigned counsel, for its complaint against Defendant R. Michael Johnson ("Johnson"), alleges as follows:

**NATURE OF ACTION**

1. By this Complaint, Koppers seeks a declaratory judgment from this Court that Johnson is subject to, and must comply with, a valid noncompetition covenant to which Johnson agreed in connection with Koppers' purchase of Johnson's former business.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction pursuant to 28 U.S.C. § 2201 and § 2202 (the Declaratory Judgment Act). The Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) as there is complete diversity between the parties and Johnson's breach of his noncompetition covenant would cause Koppers to incur damages greater than $75,000.

3. Venue is proper in this Court pursuant to Section 9.8 of the Agreement and Plan of Merger by and among Koppers, Cohiba One Inc., Cox Industries, Inc., and Johnson (the "Merger Agreement"). Under Section 9.8 of the Merger Agreement, the parties agreed that "[a]ll actions arising out of or relating to this Agreement shall be heard and determined exclusively in any New

York state or federal court sitting in New York County, New York." The parties also agreed in Section 9.8 to "submit to the exclusive jurisdiction of any state or federal court sitting in New York County, New York for the purpose of any action arising out of or relating to this Agreement brought by any Party hereto, and (b) irrevocably waive, and shall not assert by way of motion, defense, or otherwise, in any such action, any claim that it is not subject personally to the jurisdiction of the above-named courts, [] that the action is brought in an inconvenient forum, that the venue of the action is improper, or that this Agreement or the Merger may not be enforced in or by any of the above-named courts." Further, the parties agreed in the same provision that "[t]his Agreement shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts executed in and to be performed in that State …."

## PARTIES

4. Koppers is a Pennsylvania corporation with its principal place of business at 436 Seventh Avenue, Pittsburgh, Pennsylvania 15219. Koppers is a leading global provider of treated wood products, wood treatment chemicals, and carbon compounds used in a diverse range of industries, such as the railroad, specialty chemical, utility, residential lumber, agriculture, aluminum, steel, rubber, and construction industries.

5. On information and belief, Defendant R. Michael Johnson is a citizen of the State of South Carolina and resides at 145 Preserve Lane, Columbia, South Carolina 29209.

## FACTS

6. Johnson served as the President and CEO of Cox Industries, Inc. ("Cox"), a company that specialized in the manufacture and global distribution of pressure-treated utility poles and marine construction products, from January 2010 through April 2018.

7. In April 2018, Koppers acquired Cox, pursuant to the Merger Agreement, for net cash consideration of approximately $201.3 million (the "Acquisition").

8. At the time of the Acquisition, Johnson was Cox's largest single shareholder and owned approximately 26.6% of the then-outstanding shares of Cox.

9. Based on his ownership stake in Cox, at the time of the closing of the Acquisition, Johnson was paid almost $30 million in cash, $14,808,877.28 as part of a Management Incentive Plan, and $149,890 as a payout under the Cox phantom equity plan. Further, he is entitled to up to 26.6% of $10M held in escrow, of which approximately 20% has already been released to him. Thus, Johnson's total consideration in connection with the Acquisition is $46,948,051.28.

10. Johnson was party to the Merger Agreement as the Shareholder Representative and also agreed to take on certain obligations described in the Merger Agreement as a "Management Shareholder" (as such terms are defined in the Merger Agreement).

11. As a material inducement to Koppers to consummate the Acquisition, Johnson and the other Management Shareholders agreed to abide by certain restrictive covenants.

12. Pursuant to Section 6.2(a) of the Merger Agreement, Johnson agreed that for a period of five (5) years following April 10, 2018 (the "Closing Date"), he would "not directly or indirectly, own any interest in, manage, operate, control, invest or acquire an interest in, participate in, consult with, render services for, in a business, legal, or other capacity (except for his . . . authorized duties and obligations as an employee of and on behalf of the Acquired Companies or any of their Affiliates), or in any manner engage in, whether as a proprietor, owner, member, partner, shareholder, director, officer, employee, independent contractor, consultant, joint venture, investor, sales representative, or other participant, anywhere in the Restricted Area, providing,

conducting or rendering services, directly or indirectly, in connection with any Competing Business" (the "Noncompetition Covenant").

13. Section 6.2(a) further provides that if any "Specified Management Shareholder becomes employed by the Acquired Companies following the Closing and is then terminated from employment by Buyer or one of the Acquired Companies without Cause after the Closing Date, this Section 6.2(a) shall cease to apply to such Specified Management Shareholder."

14. Johnson is not a Specified Management Shareholder. Pursuant to Schedule 9.1(d) of the Merger Agreement, the only Specified Management Shareholders are Greg Campbell, Richard Lackey, Barry Breede, and Byron Altman.

15. The Acquisition closed on April 10, 2018. As of that date, Johnson began serving as Vice President, Koppers Utility and Industrial Products (the division of Koppers to which Cox was renamed following the Acquisition).

16. On or about January 2, 2020, Koppers terminated Johnson's employment.

17. On or about February 24, 2020, Johnson's attorney sent a letter to Koppers' counsel disputing that Koppers had Cause under the Merger Agreement to terminate Johnson's employment, such that the Noncompetition Covenant was no longer valid, and reserving rights to pursue a declaratory judgment to invalidate the Noncompetition Covenant. On March 4, 2020, Johnson conveyed to Koppers his belief that no court would uphold the Noncompetition Covenant, clearly indicating to Koppers his intent to bring an action to invalidate the Covenant.

18. Despite the fact that the underlying reason for the termination of Johnson's employment is irrelevant to the enforceability of the Noncompetition Covenant, Johnson has created a dispute as to whether he remains bound by the Noncompetition Covenant following the termination of his employment with Koppers.

19. Pursuant to Section 9.16 of the Merger Agreement, Johnson and Koppers agreed that "in the event of any breach or threatened breach by any Party to this Agreement of any covenant, obligation or other provision set forth in this Agreement for the benefit of any other Party to this Agreement, such other party shall be entitled (in addition to any other remedy that may be available to it pursuant to Section 8, at Law or in equity) to (a) seek a decree or order of specific performance or mandamus to enforce the observance and performance of such covenant, obligation or other provision…."

## FIRST CAUSE OF ACTION
### (Declaratory Relief)

20. Koppers realleges and incorporates by reference paragraphs 1 through 19, above, as though fully set forth herein.

21. Since Johnson is contesting the validity of the Noncompetition Covenant in light of the termination of his employment, there is an actual justiciable controversy within the meaning of 18 U.S.C. section 2201 between Koppers and Johnson concerning the continued viability of the Noncompetition Covenant in Section 6.2(a) of the Merger Agreement.

22. A judicial determination is necessary and appropriate at this time in order to resolve the parties' respective rights and obligations under Section 6.2(a) of the Merger Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Koppers prays for judgment as follows:

1. That this Court declare that the termination of Johnson's employment did not affect the viability or enforceability of Section 6.2(a) of the Merger Agreement;

2. That Johnson remains bound by the terms of Section 6.2(a) of the Merger Agreement; and

3.      That this Court grant such other and further relief as this Court may deem just and proper.

| | |
|---|---|
| Dated:  March 16, 2020 | WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation<br><br>*s/ Marina C. Tsatalis*<br>Marina C. Tsatalis<br>Matthew D. Gorman<br>1301 Avenue of the Americas, 40th Floor<br>New York, New York 10019<br>Telephone:  (212) 999-5800<br>Facsimile:  (212) 999-5899<br>Email:  mtsatalis@wsgr.com<br>Email:  mgorman@wsgr.com<br><br>*Counsel for Plaintiff Koppers Inc.* |